IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 10-131-1 |
| | : | |
| v. | : | |
| | : | |
| NATHANIEL BENJAMIN | : | CIVIL NO. 14-2526 |

REPORT AND RECOMMENDATION

JACOB P. HART                                                                       DATE:   12/1/2014
UNITED STATES MAGISTRATE JUDGE

This is a *pro se* Motion to Vacate, Set Aside or Correct a Sentence, filed pursuant to 28 U.S.C. § 2255 by Nathaniel Benjamin, who is currently in federal custody.  For the reasons set forth below, I recommend that the motion be denied without an evidentiary hearing, as is permitted where the motion, files and records show conclusively that the prisoner is entitled to no relief.  28 U.S.C. § 2255.

I.   Factual Background

On March 9, 2011, a jury sitting in the District Court for the Eastern District of Pennsylvania convicted Benjamin of possession of crack cocaine with intent to distribute; possession of marijuana with intent to distribute; and two counts of possession of a firearm by a convicted felon.  U.S. v. Benjamin, 10-cr-1031-1, Transcript of March 9, 2011, at 68-70.  Benjamin was sentenced to 240 months' imprisonment, as well as lesser sentences to be served concurrently.  Petition at ¶ 3.

Much of the material evidence, including drugs, a scale, gloves, a gun, and documents in a false name, had been obtained in a search by Benjamin's parole officer of his officially authorized parole residence in Norristown.  U.S. v. Benjamin, 10-cr-1031-1, Transcript of July 8, 2010, attached to Government's Response as Exhibit K.  At a suppression hearing, Benjamin's

parole officer, Harry Gaab, testified that he had been motivated to conduct the search by seeing Benjamin drive several cars, although he had no driver's license, in violation of his parole conditions.  Id. at 11, 13, 15.  Gaab had also been motivated by information received from a Philadelphia police detective suggesting, among other things, that Benjamin maintained an unauthorized residence in Philadelphia.  Id. at 11.

Benjamin appealed his conviction to the Court of Appeals for the Third Circuit.  In his appeal, he argued that (1) the evidence produced at trial was insufficient to support his convictions for possession with intent to distribute crack and marijuana; (2) his conviction for being a felon in possession of a firearm for having a gun in the house should have merged with the second count for firing the gun at a firing range; (3) the trial court abused its discretion by allowing references at trial to his parole statute; and that (4) the felon-in-possession statute was unconstitutional.  U.S. v. Benjamin, 711 U.S. 371, 374 (3d Cir. 2013).

The Court of Appeals decided in favor of Benjamin's argument that his two convictions for felon-in-possession should have been merged, and remanded the case accordingly.  Id. at 378-380.  Otherwise, it denied relief.  Benjamin's petition for certiorari to the United States Supreme Court was denied.  Benjamin v. U.S., 134 S. Ct. 309 (2013).

In the present motion to vacate, set aside or correct his sentence, Benjamin argues that his trial counsel was ineffective in refusing to permit him to testify at trial, and for "refusing to investigate and subpoena parole formal records to show petitioner's true parole residence."

Benjamin maintains that, despite the parole officer's testimony to the contrary, the Philadelphia address was actually his officially authorized parole residence.  Memorandum in Support of Motion at 3-4.  For that reason, the search of the Norristown residence had been unauthorized.  Id.  He argues that he should have been permitted to testify to this:

2

> Had the "Formal" and "Official" records and the petitioner's testimony been allowed to establish before the judge & jury that [the Philadelphia address], as opposed to [the Norristown address], where P.O. Gaab found the drugs & gun, was in fact the petitioner's "authorized" parole address, while the "jury lacked knowledge of petitioner's two drug priors," the jury would have contemplated acquittal.

Id. at 7.

II.     Legal Standard Re Ineffective Assistance of Counsel

In order to succeed on an ineffective assistance of counsel claim, a movant for relief pursuant to § 2255 must show that counsel's performance was deficient and that counsel's actions prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1983). In order to prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694. In other words, the defendant must show that the "result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

Furthermore, strategic choices made by counsel are presumed reasonable. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected... if they are based on professional judgment." Strickland, at 681. The district court must resist the urge to second guess counsel's strategy, as "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland at 689; and see United States v. Mercado, 536 Fed. Appx. 260, 264 (3d Cir. 2013).

3

III.    Discussion

A.    Discovery of Benjamin's Parole File

Benjamin has not succeeded in proving that he received ineffective assistance of counsel with regard to counsel's failure to obtain his parole file, for several reasons.[1] First, as the Government has pointed out, it is not clear that counsel failed to obtain it. Immediately prior to cross examination of Harry Gaab, the parole officer, defense counsel marked Gaab's notes as an exhibit. Government's Exhibit K at 22. They may have been obtained from his case file.

Even more importantly, Benjamin has not shown that he was prejudiced by any failure on counsel's part to obtain parts or all of his file. This is because he has not shown that his officially authorized parole residence was ever changed from the Norristown residence to the Philadelphia residence. At the suppression hearing, Gaab testified with extreme specificity to the contrary:

> COUNSEL:  Is there an approved residence for Mr. Benjamin?
>
> GAAB:        Yes.
>
> COUNSEL:  What is that approved residence?
>
> GAAB:        It's 534 East Marshal Street in Norristown, Pennsylvania, Montgomery County.
>
> COUNSEL:  And can you explain for his Honor the significance of an approved residence?
>
> GAAB:        Well, it's a matter of accountability, where the parolee is, at any one time, where he keeps his belongings, where he keeps his personal belongings, vehicles and also if there is any possible violations like contraband, they might be kept there also.
>
> COUNSEL:  How, very briefly, is a residence approved?

---

[1] Although Benjamin has referred to the effect of the use of his parole file as evidence at trial, it is clear that proof that the Norristown address was no longer his authorized parole address at the time of the search would have been more important at the hearing on his motion to suppress the material evidence obtained in that search. The undersigned has taken this into consideration, and has not penalized Benjamin for his failure to highlight it.

>GAAB: Prior to the release of an inmate on parole or during supervision, a request is made to live at a specific spot. The parole agent goes out and meets with the home provider and goes over the conditions of parole. If the home is appropriate, there's no signs of abuse or contraband in the home and there's a bedroom available for the parolee, then it's usually approved.
>
>COUNSEL: Now, would a parolee need specific permission to change that approved residence?
>
>GAAB: Yes, in writing.
>
>COUNSEL: Would that be approval from you or another agent?
>
>GAAB: Initially, investigated and approved by me and then it's passed on to my supervisor for a final approval.

Government's Exhibit K at 7-8.

Later, in testifying to the information he received from the Philadelphia police detective, Gaab was asked: "Had Mr. Benjamin received permission to reside at that location in Frankford?" Id. at 11. He responded: "No." Id.

There is no suggestion in the record that the identity of Benjamin's approved residence was in dispute, despite the fact that Benjamin's counsel was arguing in support of his own motion to suppress the material evidence which resulted from the search. This tends to suggest that defense counsel was not aware that such a dispute existed, which – in turn – tends to undermine Benjamin's claim of counsel ineffectiveness.

More concretely, the evidence Benjamin has attached to the present motion in support of his ineffectiveness argument is not as convincing as Gaab's highly specific testimony. He has attached a note written by Gaab, dated April 4, 2008, which states: "Stacey Esprit, g/f, called in they were having problems. Defendant needs to get new residence asap – Defendant said he could get a new residence." Attachment to Benjamin's Memorandum In Support of Motion.

This does not show that Gaab, or any other parole agent, ever inspected a new residence, or issued written approval for a change of authorized residence. No specific address is mentioned.

Benjamin has also attached a copy of a police report detailing an interview with Ms. Esprit on September 18, 2008, the day her house was searched by the parole officer. In it, she is quoted as saying: "I kicked him out in August, but he moved back in two weeks ago." Attachment to Benjamin's Memorandum In Support of Motion. This indicates that no new residence was approved in April, 2008. It also falls short of showing an authorized residence change in August, when Ms. Esprit simply "kicked Benjamin out."

Thus, Benjamin has not convincingly shown that Gaab's file contained evidence of a change in his authorized parole residence. This being the case, he has not shown that his defense counsel prejudiced him by failing to obtain the file – if, indeed, he did not obtain it.

B.      Benjamin's Right to Testify

Benjamin asserts that, prior to and during trial, he "demanded that he be permitted to testify on his own behalf and assert that, although P.O. Gaab was his P.O., Ms. Esprit's residence was not his officially authorized parole residence." Benjamin's Memorandum at 1. He claims that counsel told him "that he would not permit him to testify on his own behalf, because his two prior drug offenses could be used against him at trial … if he did testify." Id. at 2. Benjamin argues that the trial court would not have admitted the evidence of his prior convictions under Fed. R. Ev. 609(a)(1)(B): "the government would not have been able to utilize the two prior drug convictions as impeachment evidence due to their probative value being outweighed by it's prejudicial effect to the petitioner." Id. at 7.

In fact, the government had filed a motion under Rule 609, seeking to admit the evidence of Benjamin's prior convictions.  Trial Transcript of March 4, 2011, at 4, attached to Government's response as Exhibit H.  The judge reserved his decision "on the motions as to whether any of that impeachment evidence about prior convictions can come in" until it was clear whether or not Benjamin would testify.  Id.  Neither Benjamin, nor anyone else, can know with any certainty whether the judge would have granted or denied the government's 609 motion if Benjamin had testified.  As the government points out, there was a substantial legal argument in favor of granting its motion.  Government's Motion in Limine under Fed. R. 609(a)(1), attached as Exhibit F to its Response.  Given this background it is impossible to say that counsel was ineffective for advising Benjamin not to testify.

As to whether counsel simply advised Benjamin, or, as he claims, denied his "demand" to testify, the record would be clearer if Benjamin had been colloquied as to his decision not to take the stand.  Nevertheless, such a colloquy is not required.  U.S. v. Pennycook, 69 F.3d 9 (1995).  When the judge asked defense counsel if his client would take the stand, counsel responded: "Judge, that's his decision, but … I can only advise.  Sometimes they listen; sometimes they don't. … I anticipate that, most likely he will not testify.  That's been my advice."  Government's Exhibit H.

In the absence of evidence to the contrary stronger than Benjamin's naked and undetailed assertion, there seems little reason to conclude that counsel actually refused to accede to his client's demand.  See United States v. Lore, 26 F. Supp.2d 729, 737 (D.N.J. 1998) ("While a criminal defendant often has good reasons not to testify during trial, after conviction, the impulse to claim that his attorney 'would not let him' becomes compelling.").

**The petitioner may file objections to this Report and Recommendation.  See Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.**

IV.     Conclusion

Based on the foregoing, I make the following:

R E C O M M E N D A T I O N

AND NOW, this     1st     day of December, 2014, IT IS RESPECTFULLY RECOMMENDED that the motion to vacate, set aside, or correct sentence be DENIED.  There is no basis for the issuance of a certificate of appealabilty.

BY THE COURT

/s/Jacob P. Hart

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE