IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | No. 10-131 |
| NATHANIEL BENJAMIN : | |

**MEMORANDUM**

Schiller, J.                                                                                                                            January 29, 2021

Before the Court is Nathaniel Benjamin's motion for compassionate release. For the reasons that follow, the motion is granted.

I.      **FACTUAL BACKGROUND**

On March 9, 2011, Benjamin was convicted of possession with intent to distribute five grams or more of cocaine base, possession with intent to distribute marijuana, and two counts of being a felon in possession of a firearm. On July 13, 2011, he was sentenced to 240 months in prison and eight years of supervised release. Currently, he has served a little over half of his prison sentence; his projected release date is April 29, 2027, though he is eligible for home detention beginning on October 29, 2026. (Def.'s Counseled Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582 (C)(1)(A)(i) [Def.'s Counseled Mot.] Ex. B [Sentence Monitoring Computation Data].)

On June 30, 2020, Benjamin sought compassionate release from the warden at FCI Otisville, where he is currently incarcerated. (Pro Se Mot. For a Reduction in Sentence to Allow For a Compassionate Release Pursuant to the First Step Act of 2018 [Pro Se Mot.] Ex. 1 [Inmate Request to Staff].) On September 28, 2020, the warden denied that request.

Benjamin currently suffers from a number of medical conditions, including Type II diabetes, obesity, and hypertension. (*Id*. Ex. 3 [Medical Records].) He is prescribed a number of medications to manage these conditions. (*Id*.)

## II. DISCUSSION

### A. Compassionate Release Statute

A district court "may reduce [a federal inmate's] term of imprisonment" and "impose a term of probation or supervised release . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A)(ii). Finally, prior to granting a compassionate release, a district court must "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." *Id*. § 3582(c)(1)(A). Those factors include the nature and circumstances of the offense, the defendant's history and characteristics, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to provide adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(1)(2)(A-B). Additional factors include the need for the sentence to protect the public from further crimes of the defendant and to provide the defendant with needed training, medical care, and other treatment. *Id*. § 3553(a)(2)(C-D).

Although Congress has not defined the phrase "extraordinary and compelling reasons," the Sentencing Commission has enumerated four reasons that qualify as "extraordinary and compelling":

(A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is —

        (I) suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.— The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—
    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

### B. The Pandemic and the Situation at FCI Otisville

In May of 2020, when the Court first began issuing opinions deciding compassionate release motions, just over 100,000 Americans had succumbed to COVID-19. Sadly, the country's inability to control the pandemic has made that number look small relative to the number of Americans who have lost their lives to this scourge as of this writing. Today, approximately half a million Americans have died from COVID-19. And it is just as true today as it was during earlier days of the pandemic that prisons present numerous environmental factors favorable to the spread of the virus. *See United States v. Rodriguez*, Crim. A. No. 03-271, 2020 WL 1627331, at *1, 8-9 (E.D. Pa. Apr. 1, 2020) ("Prisons are tinderboxes for infectious disease.").

FCI Otisville has had a number of inmates and staff test positive for COVID-19. Indeed, the Bureau of Prisons website indicates that on January 20, 2021, three inmates and six staff tested positive for the virus. On January 26, 2021, those numbers were three inmates and seven staff. Additional inmates and staff previously tested positive and have since recovered. Courts have granted compassionate release to inmates housed at FCI Otisville. *See, e.g.*, *United States v. Zukerman*, 451 F. Supp. 3d 329 (S.D.N.Y. 2020); *United States v. Yu*, Crim A. No. 90-47, 2020 WL 6873474, at *4 (S.D.N.Y. Nov. 23, 2020) (noting that conditions in which inmates lived made it difficult for them to protect themselves from the virus); *United States v. Hasanoff*, Crim. A. No. 10-162, 2020 WL 6285308 (S.D.N.Y. Oct. 27, 2020); *United States v. Pellegrino*, Crim. A. No. 18-496, 2020 WL 5820325 (E.D.N.Y. Sept. 30, 2020) (noting the "alarming" and "apparent outbreak" suffered at Otisville).

The Government contends that "Otisville FCI is [] engaged in strenuous efforts to protect inmates against the spread of COVID-19, and would also act to treat any inmate who does contract COVID-19." (Gov't's Resp. in Opp'n to Def.'s Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582 (C)(1)(A)(i) [Gov't's Resp.] at 14-15.)

The Government's argument is unavailing. The Court believes that all prisons want to keep the virus at bay and of course FCI Otisville must treat any inmate who contracts the virus. But the reality is that the virus is present at FCI Otisville. Thus, the Court must consider whether those who have a very real risk of serious illness or death should be released in an effort to prevent a prison term from becoming a death sentence. And, as will be discussed below, Benjamin is an individual at significant risk of serious illness or death should he contract the virus.

### C. Extraordinary and Compelling Reasons

Benjamin suffers from a number of medical conditions—specifically Type II diabetes, hypertension, and obesity—which, in the context of the pandemic, qualify as an extraordinary and compelling reason for compassionate release. Benjamin cites a number of cases that support his contention that any one of the medical conditions from which he suffers has been deemed sufficient to warrant compassionate release. (Def.'s Counseled Mot. at 5 n.3.) When taken together, however, the case for concluding that extraordinary and compelling reasons for release exist here becomes even stronger. (*See id*. at 5-6.) An obese former smoker with Type II diabetes and high blood pressure is at increased risk of severe illness should he contract COVID-19. Moreover, the Government rightfully concedes that in this particular case, "the defendant is eligible for consideration for compassionate release because he presents obesity and diabetes, which are definite risk factors for severe COVID-19 disease. (Gov't's Resp. at 14.) Because this element is not disputed, and the Court agrees that Benjamin's health risks constitute an extraordinary and compelling reason for compassionate release, the Court will turn to the next part of the analysis.

### D. Consistency with Sentencing Considerations

Although Benjamin has demonstrated an "extraordinary and compelling" reason for his compassionate release exists, the Court must decide whether release is appropriate in light of the Section 3553(a) factors. The relevant factors the Court must consider include the nature and circumstances of the offense; the defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, promote respect for law, provide just punishment, provide adequate deterrence, protect the public from further crimes, and provide the defendant with needed correctional treatment in the most effective manner; and the need to avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(1-2,6). This determination is left to the discretion of the district court. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).

The Government contends that Benjamin is not entitled to compassionate release because he continues to present a danger to the community. (Gov't's Resp. at 14.) He has a significant criminal history and "he has repeatedly demonstrated that he is unable or unwilling to follow the requirements of court-ordered community supervision, instead committing new crimes while on probation and parole." (*Id*. at 15.) Moreover, Benjamin received a sentence below the advisory guideline range, and he has served justly slightly more than half of his sentence. (*Id*. at 16.)

Benjamin urges the Court to focus on the facts surrounding the crime for which he is currently incarcerated. (Pro Se Mot. at 5-6.) He notes that he was convicted of constructive possession of a firearm that his fiancée was licensed to carry. (*Id*. at 5.) His fiancée had purchased the gun for protection against an abusive husband. (Def.'s Counseled Mot. at 14.) Only a small quantity of drugs was found in the ceiling of the basement where Benjamin was living, and he was not directly linked to those drugs. (Pro Se Mot. at 5; Def.'s Counseled Mot. at 14.) Finally, Benjamin reminds the Court that at his sentencing, the Court did not find Benjamin to "have a violent history." (Pro Se Mot. Ex. 4 [Sentencing Tr.].)

Benjamin also highlights that while he has been in prison for over a decade, he has received only "four minor write-ups," none of which involved violence, and he has not been disciplined while in prison since December 3, 2017. (Def.'s Counseled Mot. at 15.) Benjamin has also continued his education while in prison. (*Id*. at 16.) And he includes a detailed plan for avoiding coming into contact with the virus as well as for employment if he is granted a compassionate release. (Pro Se Mot. at 12-14; Def.'s Counseled Mot. at 17.)

The Court will not relitigate Benjamin's trial and sentencing. He received a fair trial and was convicted by a jury. Moreover, the Court considered the facts surrounding Benjamin's crimes when imposing a sentence below the guidelines. The Government cited to a litany of cases in which it correctly points out that many defendants with health conditions who have served approximately half of their sentences were denied compassionate release. (Gov't's Resp. at 18-20.) Obviously, courts faced with compassionate release motions will often be confronted with defendants who have a significant record of drug and gun possession crimes. Angels generally need not apply for compassionate release.

Considering all of the relevant factors, however, the Court concludes that compassionate release is warranted. The crimes which landed Benjamin in prison were not violent and his criminal history does not demonstrate that he is a violent person. Moreover, he has served approximately a decade for these crimes, which equates to over half of his sentence. He will also be required to spend eight years on supervised release, and this continuous monitoring should both provide adequate deterrence and protect the public from further crimes.

### III. CONCLUSION

For the foregoing reasons, Nathaniel Benjamin's motion for compassion release under 18 U.S.C. § 3582(c)(1)(A)(i) is granted and his prison term reduced to the time served. Benjamin must now begin eight years of supervised release. An Order consistent with this Memorandum will be docketed separately.